IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
JUN 8 - 2007

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

EUGENE NESBITT,

   Plaintiff,

v.                                       Civil Action No. 1:06cv102
                                         (Judge Keeley)

UNITED STATES OF AMERICA,
BUREAU OF PRISONS AND
OFFICER M. EICHHORN,

   Defendants.

## OPINION/REPORT AND RECOMMENDATION

On June 20, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to the Federal Tort Claims Act ("FTCA") against the above-named defendants. In the complaint, the plaintiff asserts that the defendants lost, stole, or misplaced some of his personal property while he was incarcerated at the Gilmer Federal Correctional Institution in Glenville, West Virginia. On August 1, 2006, the plaintiff was granted permission to proceed as a pauper and was directed to pay an initial partial filing fee of $20.73. The plaintiff paid his initial fee on September 8, 2006.

On October 10, 2006, the undersigned conducted a preliminary review of the file pursuant to LR PL P 83.02 and 28 U.S.C. §§ 1915A and 1915(e). Upon review, the undersigned determined that summary dismissal was not warranted at that time and directed the defendants to file an answer to the complaint. On December 11, 2006, the United States filed a Notice of Substitution in which it certified that Officer Eichhorn was acting within the scope of his employment at the time the incidents alleged in the complaint took place. Therefore, the United States sought to substitute itself

as the sole defendant in this case under the terms of the FTCA.

On December 14, 2006, the undersigned determined that pursuant to 28 U.S.C. § 2679, the United States should be substituted as the sole defendant in this case. Thus, the Clerk was directed to terminate the Federal Bureau of Prisons and Officer M. Eichhorn as defendants in this action. Those defendants were terminated from this case that same day.

On January 8, 2007, the United States filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. The Court issued a <u>Roseboro</u> Notice on January 11, 2007, and the plaintiff filed a reply to the defendant's motion on March 5, 2007. Accordingly, this case is fully briefed and ripe for review.

## I. The Pleadings

### A. The Complaint

In the complaint, the plaintiff asserts that on or about November 12, 2005, his housing assignment was changed and his property was inventoried and packed to be relocated to the Special Housing Unit ("SHU"). The plaintiff asserts that his property was supposed to be secured, but that items ended up lost, stolen or misplaced during the relocation process. The plaintiff filed a tort claim with the Bureau of Prisons ("BOP") for the alleged loss of his property. The plaintiff's claim was denied on March 14, 2006.

In support of his claim, the plaintiff asserts that inmates are not allowed to thoroughly inventory their property once it has been packed and stored by staff. Instead, inmates may merely look into the property bins without touching or removing any items. The plaintiff also asserts that he was not allowed to go over the inventory slip and look at the inventory slip when viewing his property. Upon his release from the SHU, the plaintiff asserts that his property was already bagged

and placed on a cart for release. Therefore, the plaintiff asserts that he was not able to properly review his property until he was placed back into the general population. It was at this time that the plaintiff realized that his property was missing. The plaintiff estimates that the replacement value of his property is $528.35. Besides monetary damages for the loss of his property, the plaintiff also asserts that he is entitled to compensation for his pain and suffering and other incidental damages.

## B. The Defendant's Motion

In response to the complaint, the United States has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and a Memorandum in Support. In the motion, the defendant asserts that the plaintiff has failed to state a claim pursuant to the FTCA and West Virginia state law. Alternatively, the defendants assert that there is no genuine issue of any material fact and that it is entitled to judgment as a matter of law.

In its memorandum, the defendant asserts that on November 12, 2005, Officer Matthew Eichhorn was asked to send the plaintiff to see the operations supervisor. Officer Eichhorn found the plaintiff and advised him to report to the Lieutenants office. However, instead of reporting immediately as ordered, the plaintiff went to his cell and started packing his personal property. Officer Eichhorn ordered the plaintiff to put the bag down, step out the cell, and continue on to the Lieutenant's office. The plaintiff refused. Officer Eichhorn again told the plaintiff to step out of his cell and proceed to the Lieutenant's office. The plaintiff allegedly began cursing and saying that he knew he was going to the SHU and that he wanted to give his property to his cellmate. At this point, Officer Eichhorn called two officers to assist him. When the plaintiff again refused to step out of the cell, the officers took his bag, placed the plaintiff in restraints and escorted him out of his cell. According to the disciplinary report that plaintiff received regarding this incident, the incident

occurred at approximately 12:55 P.M. Memorandum (dckt 24-2), Ex. 2 at Att. A.

Once plaintiff was removed from the cell, Officer Eichhorn, collected the plaintiff's property from his cell and secured such property. Officer Eichhorn also inventoried the plaintiff's property and sent it to the SHU for storage. At the time plaintiff's property was collected, the defendant asserts that the plaintiff's locker was unsecured. According to the Inmate Property Records completed by Officer Eichhorn, the plaintiff's property was collected from his cell at 1:00 P.M. and the inventory took place between 2:00 and 2:30 P.M. Memorandum, Ex. 2 at Att. B,C.

According to the defendant, on November 16, 2005, the plaintiff signed Section 10(a) of Inmate Property Record. Id. That section states:

> Claims Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify its accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

The defendant asserts that the plaintiff did not note any missing or damaged property on the form. Moreover, upon the plaintiff's release from the SHU, the defendant asserts that the plaintiff was again given the opportunity to review his inventory and note any missing or damaged property. On January 12, 2006, the day the plaintiff was released from the SHU, he signed section 10(b) of the property forms. Id. That section states:

> Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the

inventory, the releasing officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments.

The defendant asserts that the plaintiff signed section 10(b) upon his release from the SHU without noting any missing or damaged property.

In its memorandum, the defendant acknowledges that the BOP has a duty to ensure the safety of an inmate and his property. See Memorandum at 6 (citing 18 U.S.C. § 4042). Therefore, the defendant asserts that the issue in this case is whether the defendant breached its duty of care by negligently handling the plaintiff's property. Furthermore, the defendant argues that the defendant did not breach such duty because all of the plaintiff's property present in his cell on November 12, 2005, was secured, inventoried and forwarded to the SHU for storage. Moreover, the defendant asserts that the plaintiff's property was accurately inventoried on the Inmate Property Record and that the plaintiff has failed to provide any evidence that the "missing" items were in his property at the time it was packed by Officer Eichhorn. In fact, the defendant argues that the plaintiff's signing of sections 10(a) and 10(b) on the property form certifies the accuracy of inventory. Thus, the defendant asserts that the plaintiff's FTCA claims should be dismissed because the plaintiff has failed to show any negligence on the part of prison staff and/or because he waived his right to assert any claim regarding the lost property by certifying the accuracy of the inventory.

Additionally, the defendant asserts that to the extent that the plaintiff is attempting to raise constitutional claims, those claims should be dismissed. Moreover, the defendant argues that the plaintiff is not entitled to mental or emotional damages because he has failed to show a physical injury.

## C. The Plaintiff's Reply

In his reply to the defendant's motion, the plaintiff explains that when Officer Eichhorn told him to report to the Lieutenant's Office, the plaintiff knew he would be going to the SHU. Therefore, he returned to his cell to secure his property for transfer to the SHU. The plaintiff asserts that he owned a large amount of property and that there was a high rate of theft at the institution. Consequently, he wanted to insure that his belongings were secure prior to reporting to the Lieutenant's office.

The plaintiff also admits that on November 16, 2005, he signed the property form. However, the plaintiff asserts that he signed the form because he retrieved some of his legal papers for work on a pending case. Also at that time, the plaintiff states that he was allowed to retrieve certain allowable toiletry items from his property for which he also signed the property form. The plaintiff asserts that at no time was he actually allowed to fully examine any of his property. In addition, the plaintiff asserts that upon his release on January 12, 2006, he was escorted to a holding cell and told to sign the property form so that his property could be released from storage. The plaintiff asserts that at that time, his property was sitting outside the holding cell on a cart and that it was already bagged. The plaintiff asserts that the first opportunity he had to thoroughly inspect his property was when he was returned to the general population.

Next, the plaintiff appears to argue that Officer Eichhorn should be responsible for the lost property in both his official and individual capacities.

The plaintiff then asserts that because there are genuine issues of material fact in dispute, the defendant's motion should be denied. Attached to his reply are affidavits from other inmates in which they verify that inmates in the SHU are not actually allowed to fully inventory their property

6

until their release back to the general population.

## II. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### B. Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## III. Analysis

### A. Negligence Claims

The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia governs this case.

In West Virginia,

> every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it

8

> is incumbent upon the plaintiff to establish . . . three propositions:
> (1) A duty which the defendant owes to him; (2) A negligent breach
> of that duty; (3) Injuries suffered thereby, resulting proximately from
> the breach of that duty.

Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939).

With regard to federal prisoners, the BOP owes a duty to provide suitable quarters, and to provide for the inmates' safekeeping, care, and subsistence. 28 U.S.C. § 4042(a). This duty, similar to the duty of a landowner in West Virginia, has been interpreted as one of "reasonable care." See McNeal v. United States, 979 F.Supp. 431 (N.D.W.Va. 1997); Burdette v. Burdette, 127 S.E.2d 249 (1962). "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner, or person." Mallet v. Pickens, 206 W.Va. 145, 155, 522 S.E.2d 436, 446 (1999) (citations omitted).

Because 18 U.S.C. § 4042 recognizes the existence of a duty, the issue in this case is whether the defendant breached such duty and whether such breach was the proximate cause of the plaintiff's loss. In other words, the Court must focus on whether prison officials were negligent in handling the plaintiff's property. Reviewing the facts in the light most favorable to the plaintiff, the Court finds that there was no breach of duty, and even if there was, the plaintiff has waived his claims with regard to the lost property.

The undisputed facts show that the plaintiff was told by Officer Eichhorn that he was to report to the Lieutenant's office. When the plaintiff failed to do so after repeated orders from Officer Eichhorn, additional staff was called and the plaintiff was removed from his cell. These events occurred at approximately 12:55 P.M. on November 12, 2005. Only five minutes later, Officer Eichhorn packed and secured the plaintiff's property. At the time Officer Eichhorn packed the plaintiff's property, the plaintiff's locker was unsecured. Therefore, assuming that the plaintiff

owned the alleged missing items at the time he was placed in the SHU on November 12, 2005, Officer Eichhorn acted promptly and swiftly in securing the plaintiff's property. Thus, Officer Eichhorn's actions were reasonable under the circumstances and there was no breach of duty. However, even if there were, the plaintiff waived his claims with regard to the lost property by signing sections 10(a) and 10(b) of the property form. See Wolff v. Hood, 242 F.Supp.2d 811 (D.Ore. 2002); Riley v. United States, 938 F. Supp. 708 (D.Kan. 1996); Taylor v. United States, 2006 WL 1806178 (W.D.Va. June 29, 2006); Deutsch v. United States, 1996 WL 24754 (E.D.Pa. Jan. 23, 1996).

## B. Constitutional Claims

With regard to the plaintiff's claims that the defendant violated his constitutional rights, the FTCA cannot be used to raise a constitutional claim as the United States has not waived its sovereign immunity with respect to constitutional torts. See FDIC v. Meyer, 510 U.S. 471 (1994). To the extent such claims can be made, that must be made against the individual federal employees who allegedly violated his rights. Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395 (1971). However, the plaintiff did not allege claims against Officer Eichhorn in his individual capacity in the complaint. Instead, the plaintiff alleged that Officer Eichhorn was acting within the scope of his employment at the time his property was allegedly misplaced or damaged. However, in his reply, the plaintiff does appear to argue that he intended to name Officer Eichhorn in both his official and individual capacities.

## C. Individual Capacity Claims Against Officer Eichhorn

Unlike claims against state actors under 42 U.S.C. § 1983, constitutional claims against individual federal employees are not statutorily authorized. Instead, those claims were created only

through judicial authority. Thus, constitutional claims against federal employees in their individual capacities are subject to the limitations of judicial authority.

In Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court found two instances in which a Bivens action cannot be maintained. First, when there are "special factors counseling hesitation in the absence of affirmative action by Congress." Carlson, 446 U.S. at 18. Second, when "Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." Id. at 18-19 (emphasis in original).

Here, Congress has explicitly stated that the exclusive remedy for recovery of loss of property is against the United States. See 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment *is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . .*") (emphasis added). Accordingly, the plaintiff cannot bring a Bivens action against Officer Eichhorn.

## D. Mental and Emotional Damages

Section 1997e(e) of the Prison Litigation Reform Act provides that "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury, suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In this case, the plaintiff has failed to allege any physical injury as a result of the actions of the defendant. Therefore, the plaintiff is precluded from an award of damages for mental or

emotional damages. See Page v. Kirby, 314 F.Supp.2d 619, 621-22 (N.D.W.Va. 2004).

## IV. Recommendation

For the foregoing reasons, it is the recommendation of the undersigned that the United States' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 24) be **GRANTED** and that the plaintiff's complaint be **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this Opinion/Repot and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff.

DATED: June 8, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE